UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS ASSET FINANCING CORPORATION, a Massachusetts corporation, | ) ) ) ) | |
| Plaintiff/ Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | CV 00-BU-1937-S |
| THE WEST JEFFERSON AMUSEMENT AND PUBLIC PARK AUTHORITY, | ) ) ) ) | |
| Defendant/ Counterclaim Plaintiff/ Third-Party Plaintiff, | ) ) ) ) | **ENTERED** APR 20 2001 |
| v. | ) ) | |
| DINAMATION INTERNATIONAL CORPORATION, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

---

## Memorandum Opinion

---

Now before the Court in the above-styled action is a "Renewed Motion for Summary Judgment on Its Breach of Contract Claim and Motion for Summary

Judgment on Defendant's Counterclaims," filed on February 16, 2001 by Plaintiff/Counterclaim Defendant Massachusetts Asset Financing Corporation. ("MAFC"). (Doc. 48).  MAFC has filed a brief and evidence in support of its motion.   Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, The West Jefferson Amusement and Public Park Authority ("West Jefferson"), has not filed a brief or evidence in direct opposition to the MAFC's "renewed" motion; rather, West Jefferson has indicated that it is content to rely upon the evidence and arguments it offered in opposition to MAFC's "original" motion for summary judgment, which was filed on September 7, 2000, and was summarily denied by the Court on November 9, 2000.  Upon careful consideration of the record and the arguments of counsel, the Court concludes that MAFC's renewed motion for summary judgment is due to be GRANTED.  However, the Court concludes that MAFC has failed to demonstrate that it is entitled to the full amount of damages it seeks by said motion.

## I. BACKGROUND[1]

West Jefferson is a public authority incorporated pursuant to §§ 11-47-210 through 11-47-219 of the Alabama Code.  It was formed by eleven municipalities to construct and operate an amusement park known as "VisionLand Park"("VisionLand"), which is located in Jefferson County, Alabama, and opened in May 1998.  On March 1, 1999, West Jefferson entered into a contract whereby it agreed to lease an exhibit featuring a number of dinosaur replicas (the "Exhibit

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Items") from Third-Party Defendant Dinamation International Corporation ("Dinamation"), which is alleged to be a citizen of California. Pursuant to this lease agreement (the "Lease Agreement"), Dinamation delivered the Exhibit Items to West Jefferson in a series of shipments beginning in May 1999. However, some of the Exhibit Items were used and many, according to West Jefferson, had to have their foam rubber "skins" repaired before they could be displayed.

Nonetheless, after entering into the Lease Agreement, representatives from West Jefferson and Dinamation considered entering into a Purchase/Licensing Agreement (the "Purchase Agreement"), pursuant to which Dinamation would sell the Exhibit Items to West Jefferson and grant it the right to exhibit them and use the Dinamation name, trademark, and logo (collectively, the "Dinamation Trademark"). According to West Jefferson, during the course of a sales presentation and subsequent negotiations, a representative of Dinamation represented to West Jefferson's board of directors and to certain other of its representatives that if the Purchase Agreement were to be consummated, VisionLand would have the largest collection of mechanical dinosaurs on public display in the entire country and that the addition of this display would increase attendance at Visionland by ten to fifteen percent. West Jefferson claims, however, that it made known to Dinamation that it was concerned about whether the Exhibit Items would be sufficiently durable to withstand being in a permanent outdoor display in the Alabama climate. Attempting to allay such fears, a Dinamation representative personally inspected the proposed display site and allegedly stated to West Jefferson representatives that they should have no problems having the exhibition outdoors at the proposed site because trees on the location

would provide a protective cover for the Exhibit Items and that Dinamation would supply an ultraviolet protectant to be applied to the dinosaur "skins" as an additional precautionary measure. West Jefferson asserts that based on these representations, it entered into the Purchase Agreement with Dinamation on June 15, 1999.

Under the terms of the Purchase Agreement, West Jefferson consented to pay Dinamation the total sum of $2,023,762, in installments as follows:

| | | | |
|-----|-------------|-----------|-------------------------------------|
| (1) | Deposit     | $111,200  | PAID                                |
| (2) | Payment #2  | $200,000  | PAID                                |
| (3) | Payment #3  | $219,575  | (due on or before August 1, 1999)   |
| (4) | Payment #4  | $500,000  | (due on or before May 31, 2000)     |
| (5) | Payment #5  | $500,000  | (due on or before May 31, 2001)     |
| (6) | Payment #6  | $492,987  | (due on or before May 31, 2002).    |

Purchase Agreement, ¶ 2(C). The Purchase Agreement provides that a ten percent penalty is owed on each payment not received within ten days of its due date. Id., ¶ 2(E). In addition, if any legal action is necessary to enforce its terms and conditions, the Purchase Agreement stipulates that the prevailing party shall be entitled to recover reasonable attorney's fees. Id., ¶ 15.

The Purchase Agreement provides that West Jefferson was responsible for the installation of the Exhibit Items, which proceeded during the summer months of 1999. However, the Purchase Agreement establishes that Dinamation agreed to extend a 90-day warranty on the Exhibit Items "for parts and materials (exclusive of skins)" and to provide 90 days service and labor to West Jefferson. Purchase Agreement, ¶ 6(B). While the foregoing quoted contract language reasonably suggests that costs, labor, and materials for replacement of skins for the Exhibit Items were not covered by the 90-day warranty, the Purchase Agreement so

provides expressly as well. Id. After the initial 90-day warranty period expired, West Jefferson became responsible for all repairs and maintenance of the Exhibit Items.

In July 1999, Dinamation was contemplating an assignment of its rights under the Purchase Agreement to Plaintiff/Counterclaim Defendant MAFC. There is no limitation upon Dinamation's right to make such an assignment within the Purchase Agreement, although West Jefferson is restricted from assigning or sublicensing its interest without the written consent of Dinamation. Purchase Agreement, ¶ 5. In furtherance of assigning its rights, Dinamation faxed to G. Robert Langford ("Robert Langford"), a West Jefferson representative and VisionLand's general manager, a document on Dinamation letterhead entitled, "Estoppel and Consent Agreement" (hereinafter the "Estoppel and Consent Agreement"). On July 17, 1999, Robert Langford signed, on behalf of West Jefferson, the Estoppel and Consent Agreement, which recited, among other things, that West Jefferson was consenting to an assignment to MAFC of Dinamation's right to receive the three payments due from West Jefferson on May 31, 2000, 2001, and 2002 under the Purchase Agreement and that West Jefferson agreed to make such payments directly to MAFC. The Estoppel and Consent Agreement further provides that West Jefferson acknowledged as follows:

> [West Jefferson] has no set off or counterclaim against [Dinamation] or any other claim against the [Dinamation] under the [Purchase Agreement] or any other agreement to which [West Jefferson] and [Dinamation] are a party, including without limitation, under any indemnity agreement, guaranty, warranty, or any training, service or maintenance agreement, and [West Jefferson] is not aware of any condition which with the passage of time or the giving of notice will result in any claim of any nature by [West Jefferson] against

[Dinamation]. [West Jefferson] further agrees not to exercise any future right to set off or counterclaim it may have against [Dinamation] to the payments due [MAFC] under the [Purchase Agreement].

Estoppel and Consent Agreement, ¶ 13.

On or about July 19, 1999, Dinamation and MAFC finalized in writing their bargain by which the former would assign its rights under the Purchase Agreement to the latter. This "Purchase and Assignment Agreement" (hereinafter the "Assignment Agreement") stipulated, among other things, that MAFC obtained Dinamation's right to receive the three payments due from West Jefferson on May 31, 2000, 2001, and 2002. Such payments were to total $1,472,987, exclusive of penalty fees.

Meanwhile, as the Exhibit Items were installed at VisionLand during the summer of 1999, problems allegedly arose with them almost immediately. In particular, computer boards that controlled the moving parts on about six of twelve animatronic dinosaurs in the exhibit shorted out and had to be replaced. VisionLand's maintenance manager, Robert Walters, acknowledged that for a period of about two or three weeks, all of the Exhibit Items were operating, although he qualified that they never all worked entirely "the way they should have been." Indeed, West Jefferson alleges that, by the end of that summer, the "skins" on many of the Exhibit Items were peeling off and the teeth were falling out. Nonetheless, in a September 9, 1999 letter to Dinamation CEO Chris Mays, Robert Langford indicated that, effective that date, West Jefferson waived any claims for services and reimbursement under the terms of the 90-day warranty for parts and materials, exclusive of skins on the Exhibit Items, and that Dinamation had satisfied

all terms of the warranty. But because the Exhibit Items became unfit for viewing, the entire display was shut down prior to the close of VisionLand's 1999 operating season, and it has not been open to the public since.

West Jefferson failed to pay the $500,000 payment that was due on May 31, 2000 pursuant to the Purchase Agreement. MAFC, which had been assigned the right to receive such payment, immediately demanded that West Jefferson cure such default. After West Jefferson failed to do so, MAFC, a citizen of Massachusetts, filed this action on July 12, 2000, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.[2] MAFC specifically claims that West Jefferson is liable for breach of contract (Count I) and also sought an injunction directing that West Jefferson discontinue using the Dinamation Trademark (Count II). On October 20, 2000, West Jefferson responded by filing an amended counterclaim against MAFC containing the following claims and defenses: breach of contract (Count I); "revocation of acceptance" (Count II); "recission" (Count III); breach of express warranty (Count IV); breach of implied warranty (Count V); fraud in the inducement (Count VI); and fraudulent suppression (Count VII). On January 10, 2001, West Jefferson filed a third-party complaint alleging identical claims against Dinamation. Now before the Court is MAFC's "renewed" motion for summary judgment on its breach-of-contract claim against West Jefferson[3] and for summary judgment on all counterclaims asserted against it by West Jefferson. (Doc. 48). On

---

[2]28 U.S.C. § 1332(a)(1) provides that the district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs and is between citizens of different states.

[3]On November 9, 2000, the Court summarily denied MAFC's "original" motion for summary judgment on its contract claim against West Jefferson.

said contract claim, MAFC seeks a judgment awarding damages of $1,492,987 for the three payments due May 31, 2000, 2001, and 2002 under the Purchase Agreement; plus a $50,000 stipulated penalty on the first of those three payments; plus an attorney fee in the amount of $52,850.90, for a grand total of $1,595,837.90.

## II.  SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the

nonmovant's favor. <u>Rooney v. Watson</u>, 101 F.3d 1378, 1380 (11th Cir. 1996) (<u>citing</u> <u>Hale v. Tallapoosa Co.</u>, 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " <u>Reeves</u> <u>v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299). Bearing these standards in mind, the Court turns to the parties' arguments regarding MAFC's motion.

## III. CONTENTIONS & ANALYSIS

MAFC contends that it is entitled to summary judgment on its claim for breach of contract against West Jefferson. Because jurisdiction over this claim is founded upon diversity of citizenship, the Court is required to apply the substantive law of the forum state, Alabama, unless federal constitutional or statutory law compels a contrary result. <u>Technical Coating Applicators, Inc. v.</u> <u>U.S. Fidelity and Guar. Co.</u>, 157 F.3d 843, 844 (11th Cir. 1998); <u>Baldwin County,</u> <u>Ala. v. Purcell Corp.</u>, 971 F.2d 1558, 1564 (11th Cir. 1992). Further, the Purchase Agreement provides that its terms shall be governed by Alabama law, Purchase Agreement at ¶ 9, and neither party challenges the applicability of such law to the dispute here. In order to prevail on a claim alleging breach of contract under Alabama law, the claimant has the burden at trial to prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages. <u>Southern Medical</u> <u>Health Systems, Inc. v. Vaughn</u>, 669 So.2d 98, 99 (Ala. 1995).

West Jefferson admits that it entered into a contract with Dinamation, under the terms of which it would be obligated to pay MAFC, as Dinamation's assignee, the amount listed as due under the Purchase Agreement. West Jefferson also does not claim that any action or omission on the part of MAFC itself would defeat MAFC's recovery. Instead, West Jefferson maintains that MAFC's contract claim is subject to all the claims and defenses that it, West Jefferson, could have asserted against the assignor, Dinamation. In particular, West Jefferson contends that MAFC should not be able to recover on the contract because: (1) Dinamation allegedly breached the Purchase Agreement by delivering Exhibit Items that were not suitable for outdoor display and were not in good working order; (2) such breach by Dinamation allegedly allows West Jefferson to revoke its acceptance of the Exhibit Items and rescind the contract; (3) Dinamation breached a number of express and implied warranties; and (4) Dinamation is allegedly guilty of fraud in the inducement based on its sales presentations and assurances as to the quality of the Exhibit Items.

West Jefferson claims that it, as an account debtor, might assert such claims and defenses against MAFC based upon § 7-9-318, Ala. Code (2000), which provides in pertinent part as follows:

> (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 7-9-206 the rights of an assignee are subject to:
>
> > (a) All of the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom . . . .

Such language is adopted from § 9-318 of the Uniform Commercial Code ("UCC")

and generally codifies the common law. See Official Comment to § 7-9-318, ¶ 1; Head v. Southern Development Co., 614 So.2d 1044, 1047 n.2 (Ala. 1993); In re Sunbelt Vacation Travel, Inc., 94 B.R. 715, 720 (Bankr. S.D. Ala. 1988). Thus, the general rule in Alabama is that an assignee of accounts receivable simply steps into the shoes of its assignor with respect to the defenses and setoffs available to an account debtor. See Sunbelt Vacation Travel, supra; Ford Motor Credit Co. v. Rutherford, 481 So. 2d 870, 872 (Ala. 1985). However, an account debtor may only assert defensively claims relating to the underlying contract and its formation and may not impose affirmative liability upon an assignee based on the alleged misconduct or failures of the assignor. See Lawson State Community College v. First Continental Leasing Corp., 529 So. 2d 926, 930-32 (Ala. 1988), overruled on other grounds, Berner v. Caldwell, 543 So. 2d 686 (Ala. 1989).

Pursuant to the Lawson State decision, West Jefferson cannot under Alabama law impose liability for damages upon MAFC, a mere assignee, for breach of contract or warranties or for fraud based on the alleged misconduct of the assignor, Dinamation. To the extent West Jefferson is seeking an affirmative recovery via its counterclaims against MAFC, such counterclaims are due to be dismissed on summary judgment. However, West Jefferson urges that it should still be able to interpose the claims and defenses it raises as a means to prevent MAFC from collecting the proceeds that might otherwise be due under the Purchase Agreement.

To this, MAFC responds that West Jefferson is foreclosed by the Estoppel and Consent Agreement from asserting against MAFC any of the defenses now offered. MAFC correctly points out that § 7-9-318(1) provides that its "stands in the shoes" default rule may be modified where an "account debtor has made an

enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 7-9-206 . . . ."  MAFC emphasizes that West Jefferson acknowledged in the Estoppel and Consent Agreement that it agreed "not to exercise any future right of set off or counterclaim it may have against [Dinamation] to the payments due [MAFC] under the [Purchase Agreement]" and that such constitutes an enforceable agreement under § 7-9-206.

Section 7-9-206, Ala. Code (2000), adopted from § 9-206 of the UCC, provides in pertinent part as follows:

> (1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on negotiable instruments (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.

West Jefferson concedes that its acknowledgment in the Estoppel and Consent Agreement that it would not in the future assert against MAFC any setoff or counterclaim it might have against Dinamation at least "[a]rguably" constitutes an "agreement not to assert defenses or claims arising out of a sale as provided in Section 7-9-206," within the meaning of § 7-9-318. Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief") at 10.  West Jefferson appears to further concede that the evidence establishes that MAFC took the assignment for value, in good faith, and without notice of any claim or defense,

and thus qualifies as a holder in due course for purposes of § 7-9-206.[4]  See Leasing Service Corp. v. River City Const., Inc., 743 F.2d 871, 875-76 (11th Cir. 1984). Nonetheless, West Jefferson argues that this waiver-of-defense clause of the Estoppel and Consent Agreement should not be enforced, first, because to do so would violate public policy and "fairness concerns."  Defendant's Brief at 10.  West Jefferson, citing Fairfield Credit Corp. v. Donnelly, 264 A.2d 547, 550-51 (Conn. 1969), points out that some courts have held that waivers of claims against an assignee void as against public policy in the context of consumer transactions and that such waivers are an impermissible attempt to create negotiable instruments to an otherwise non-negotiable instrument.  West Jefferson further contends that to enforce the agreement in this case, where the account was assigned to MAFC a month after the Exhibit Items were sold, does not further the main policy objective underlying § 9-206 of the UCC, promoting the liberal extension of credit.

The obvious and fatal flaw with this argument is that, whatever objections might be made with respect to their use in consumer goods transactions, clauses in a security agreement in which "the conditional vendee agrees not to assert defenses against an assignee of the contract" . . . "are validated outside the consumer field" under the plain language § 7-9-206(1), except as to real defenses that may be asserted against a holder in due course of a negotiable instrument.  Official Comment to § 7-9-206, ¶ 1.  "Courts have long afforded consumers greater protection than

_____

[4]In its brief in opposition to MAFC's "original" motion for summary judgment, West Jefferson argued that such motion should not be granted because discovery was needed to explore the question of whether MAFC qualifies as a holder in due course.  See Defendant's Brief at 12.  However, full discovery has been conducted, and West Jefferson has not offered any evidence or argument to contradict MAFC's claim that it is a holder in due course.  See Affidavit of Philip Nadel, Plaintiff's Ex. 1, ¶ 16; Estoppel and Consent Agreement, ¶ 13.

commercial debtors in enforcing waiver of defense clauses." Leasing Service, 743 F.2d at 876.   The transaction in the instant case indisputably did not involve "consumer goods."[5]  Moreover, the Court finds plainly wrong West Jefferson's assertion that the policy favoring the free flow of credit is not served by enforcement of a waiver-of-defense clause simply because the account receivable was assigned a month after the debt was created.  MAFC unarguably extended credit in this case, and it cannot be seriously disputed that enforcement of waiver- of-defense clauses such as that present here encourage MAFC and other financiers to do so because such significantly decreases the attendant risk.  Moreover, even if it did not believe one public policy or another was served, this Court is not free to re-write Alabama statutory law as it might see fit.  West Jefferson's argument on this point is unpersuasive.

West Jefferson also suggests, however, that the Estoppel and Consent Agreement should not be enforced for lack of consideration.  West Jefferson contends that the secured transaction for the sale of the Exhibit Items was completed, and the rights of the parties established, in June 1999 with the signing of the Purchase Agreement.  West Jefferson emphasizes that when its representative signed the Estoppel and Consent Agreement approximately one month later, no extension of credit or other valuable consideration was afforded West Jefferson in exchange for waiving its right to interpose defenses relating to the sale of the Exhibit Items.  See Defendant's Brief at 11.

A fundamental principle of contract law in Alabama, as elsewhere, is that a

---

[5]Section 7-9-109(1), Ala. Code (2000), provides that "goods" are classified as " '[c]onsumer goods' if they are used or bought for use primarily for personal, family or household purposes."

promise, in order to be enforceable, generally must be supported by consideration, i.e., "an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." Ex parte Grant, 711 So. 2d 464, 465 (Ala. 1997) (quoting Smoyer v. Birmingham Area Chamber of Commerce, 517 So. 2d 585, 587 (Ala. 1987)). Further, where parties seek to modify an existing contract, Alabama common law provides that some form of valuable consideration is also normally required to render the alteration enforceable. Mooradian v. Canal Ins. Co., 272 Ala. 373, 130 So. 2d 915 (1961); Shriner v. Craft, 166 Ala. 146, 51 So. 884 (1909). Where there is a bilateral executory contract, both parties may simply agree to assume different obligations, with such mutual new promises furnishing sufficient consideration to support the modification. Winegardner v. Burns, 361 So. 2d 1054 (Ala. 1978); Jones v. First Nat'l Bank, 206 Ala. 203, 89 So. 437 (1921); Commercial Contracts, Inc. v. U.S. Fidelity & Guaranty Co., 524 F.2d 944 (5th Cir. 1975)[6]. However, Alabama courts have historically held that there is insufficient consideration in the absence of such reciprocity of consideration. In other words, each party had to gain or lose something by the change to the original contract, because doing or undertaking to do something that one was already legally required to do was not regarded as consideration for another's agreement to do what he is not under a legal obligation to do. Mobile Turnkey Housing, Inc. v. Ceafco, Inc., 294 Ala. 707, 711-12, 321 So. 2d 186, 189 (1975); Moore v. Williamson, 213 Ala. 274, 104 So. 645 (1925); Kelley v. Spencer, 213 Ala. 612, 105 So. 802 (1925); Brown v. Lowndes County, 201 Ala.

---

[6]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

437, 78 So. 815 (1918); Shriner, supra.

At its heart, the Estoppel and Consent Agreement is a modification of the Purchase Agreement, altering the party to whom West Jefferson was obligated to make payments for the sale, service, and licensing of the Exhibit Items. West Jefferson is correct that its acknowledgment in the Estoppel and Consent Agreement that it would not raise any defenses against MAFC that it might have against Dinamation based on the sale of the Exhibit Items was not supported by any consideration. Pursuant to the Purchase Agreement, West Jefferson was already legally entitled, and had already at least partially received, the benefits of the goods, services, and license promised by Dinamation, and West Jefferson was likewise already obligated to make the very same payments assigned to MAFC. Thus, it appears that no benefit of any kind flowed to West Jefferson as a result of its signing of the Estoppel and Consent Agreement. Under traditional common law principles, such a modification, including the waiver-of-defenses clause, unsupported by consideration would not be enforceable as a simple contract.[7]

---

[7]Without directly confronting the consideration-based argument raised by West Jefferson, MAFC asserts that the waiver of defense clause here is enforceable because a nearly identical clause was held enforceable under UCC § 9-206 by the Eleventh Circuit in the Leasing Service Corp. case, which MAFC claims "is on all fours" with the instant case. However, the lack-of-consideration issue now raised by West Jefferson was neither expressly raised in Leasing Service nor presented by the facts of that case. There, Chatham Machinery leased two heavy-duty truck cranes to River City Construction in 1979. Id. at 873. In July 1980, Chatham and River City executed an agreement prepared by Leasing Service Corporation, by which River City acknowledged that the financing on the two cranes was to be assigned from Chatham to Leasing Service. Id. at 874. That agreement contained terms that are materially similar to those of the waiver in the Estoppel and Consent Agreement signed by West Jefferson, to the effect that River City agreed not to assert against Leasing Service any claim or defense it might assert against Chatham. Id. at 875. However, it is clear that there was sufficient consideration to support the July 1980 agreement in Leasing Service because River City received at least ostensible benefits therefrom in the form of lower monthly rent and a longer "payout period." Id. at 873. Here, following the assignment, West Jefferson was required to make payments to MAFC in the same

Nonetheless, the Court concludes that the waiver-of-defense clause is still enforceable against West Jefferson under at least two theories.  First, Alabama's adoption of § 2-209(1) of the UCC has modified the common law rule requiring consideration for contract alterations by providing that an agreement modifying a sales contract within Article 2 of the UCC needs no additional consideration to be binding, provided that the modification meets the test of good faith.  See § 7-2-209(1), Ala. Code (2000); Official Comment thereto, ¶¶ 1, 2.  The Court concludes that, under § 7-2-102, Ala. Code (2000), the Estoppel and Consent Agreement's modification to the Purchase Agreement is governed by § 7-2-209(1), meaning that no new consideration was required for West Jefferson's waiver to be valid under § 7-9-206. See Chemical Bank v. Rinden Professional Association, 126 N.H. 688, 498 A.2d 706, 712-13 (1985) (holding that, under UCC §§ 9-209(1) and 2-102, incorporated into the applicable law of Massachusetts, no additional consideration was required to enforce a waiver-of-defense clause under UCC § 9-206). Accordingly, the Estoppel and Consent Agreement is valid and enforceable under Alabama statutory law.

Alternately, MAFC may enforce the waiver-of-defense clause under a straightforward application of promissory estoppel.  Under that doctrine, " '[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " Ford v. Jackson Square, Ltd., 548 So. 2d

---

amounts and on the same dates as it was required to make to Dinamation before the assignment. Accordingly, Leasing Service is not dispositive of West Jefferson's argument that the Estoppel and Consent Agreement is unenforceable for lack of consideration.

1007, 1013 (Ala. 1989) (quoting <u>Bush v. Bush</u>, 278 Ala. 244, 245, 177 So. 2d 568, 578 (1964)).  In a related vein, under Alabama common law, "either party may waive any right or benefit he may have by a contract, and if the other party acts upon the faith of the waiver, the question of consideration is out of the case, upon the doctrine of estoppel." <u>Winegardner</u>, 361 So. 2d at 1057 (quoting <u>Moore</u>, <u>supra</u>).  " 'The purpose of equitable estoppel and promissory estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." ' <u>Haginas v. Haginas</u>, 598 So. 2d 1334, 1337 (Ala. 1992) (quoting <u>First National Bank of Opp v. Boles</u>, 231 Ala. 473, 479, 165 So. 586, 592 (1936)).

By signing the Estoppel and Consent Agreement on July 15, 1999, West Jefferson "represent[ed]" and "warrant[ed] to [MAFC]," by sworn statement, that it had no set off or counterclaim against Dinamation under the Purchase Agreement and that it expressly "agree[ed] not to exercise any future right to set off or counterclaim it may have against [Dinamation] to the payments due [MAFC] under the [Purchase Agreement]." Estoppel and Consent Agreement, Preamble and ¶ 13. Two days later, MAFC detrimentally relied upon West Jefferson's clear and explicit promise by entering into the Assignment Agreement with Dinamation. In fact, the Assignment Agreement expressly provides that MAFC's purchase of Dinamation's rights under the Purchase Agreement was contingent upon delivery of the fully executed Estoppel and Consent Agreement by West Jefferson. See Assignment Agreement, ¶ 4.8. The Court concludes that such is sufficient to establish that it would be unjust not to enforce the waiver-of-defenses clause of the Estoppel and

Consent Agreement against West Jefferson. Because the elements of promissory estoppel under Alabama law are met, the Court concludes that the clause is enforceable against West Jefferson, even in the absence of the UCC and notwithstanding any lack of consideration.

Given the Court's conclusion that the waiver of defenses clause is enforceable and that there is no dispute that MAFC qualifies as a holder in due course, West Jefferson is precluded, pursuant to § 7-9-206(1), from asserting any claim or defense against MAFC which it may have had against Dinamation, except as to "real" defenses, i.e., those that may lie against a holder in due course of a negotiable instrument. See Leasing Service Corp., 743 F.2d at 875. None of West Jefferson's proffered defenses fit that bill, because they are all founded upon allegations of breach of contract, breach of warranties, and fraud in the inducement. See § 7-3-305, Ala. Code (2000) (defenses that may be asserted against a holder in due course are: infancy of the obligor, duress, lack of legal capacity, illegality of the transaction, fraud in the factum, and discharge of the obligor in insolvency proceedings). See also Leasing Service Corp., 743 F.2d at 877-78 (while fraud in the factum may be asserted against an assignee under UCC § 9-206, fraud in the inducement may not); Credit Alliance Corp. v. Cornelius & Rush Coal Co., 508 F.Supp. 63 (N.D. Ala. 1980) (precluding an account debtor from asserting defense of breach of warranty against an assignee pursuant to an agreement under § 7-9-206); Benedictine College, Inc. v. Century Office Products, Inc., 853 F.Supp. 1315, 1323 (D. Kan. 1994) (breach of contract defense may not be asserted against an assignee under Kansas law, due to its adoption of UCC § 9-206); Apple Bank for Sav. v. Charles Offset Co., Inc., 540 N.Y.S.2d 299, 149 A.D.2d 641 (2nd Dep't 1989) (under UCC § 9-206,

adopted in New York, a lessee was not entitled to raise defenses of breach of express and implied warranties made by manufacturer to lessee in purchase agreements).

The Court concludes that, given the failure of West Jefferson to assert a viable "real" defense in the face of the enforceable waiver-of-defense clause contained in the Estoppel and Consent Agreement, there is no genuine issue of material fact and MAFC is entitled to judgment as a matter of law with respect to liability upon its breach-of-contract claim against West Jefferson, as well as upon all of West Jefferson's counterclaims asserted against MAFC. Therefore, MAFC's motion for summary judgment on all such claims is due to be granted.

However, the Court concludes that MAFC has failed to carry its burden on summary judgment to show that it is entitled, as a matter of law, to the full amount of damages it now seeks. Under the Purchase Agreement, West Jefferson was due to pay Dinamation $500,000 on May 31, 2000. Following its receipt of notice of Dinamation's assignment, West Jefferson was obligated to make that payment to MAFC, but it failed to do so. The Court acknowledges that MAFC has demonstrated that it is now entitled to recover an amount representing that $500,000 payment, as well as a $50,000 penalty for West Jefferson's failure to make the payment within 10 days of its due date. Further, the Court recognizes that MAFC is entitled under the Purchase Agreement to recover a reasonable attorney's fee incurred to collect the amount due. MAFC claims that such fee amounts to $52,850.90, see Plaintiff's Ex. E, and West Jefferson has offered no substantive evidence or argument contesting the propriety of that amount.[8] Therefore, the

---

[8]West Jefferson addresses this issue by stating only that MAFC's motion for summary judgment on its contract claim is due to be denied, so consideration of MAFC's claim for attorney's fees is premature. See Defendant's Brief at 12.

Court holds that MAFC is entitled to a summary judgment that includes an award of \$602,850.90, comprised of the foregoing sums.

However, MAFC also claims that it is now entitled to recover an additional \$992,987, comprised of the \$500,000 and \$492,987 payments due under the Purchase Agreement on May 31, 2001 and May 31, 2002, respectively. Obviously, those due dates have not yet come to pass. Nonetheless, MAFC appears to assume that West Jefferson's failure to pay the \$500,000 installment due on May 31, 2000 triggered its obligation to pay the installments due in 2001 and 2002 as well. Such would likely be the case if the Purchase Agreement, or perhaps even the Estoppel and Consent Agreement, contained an acceleration clause, i.e., a loan-agreement provision that allows the creditor to require the debtor to pay off the balance sooner than the due date if some specified event occurs, such as the failure to pay an installment. See Black's Law Dictionary 11 (7th ed. 1999). Such clauses are often standard in installment credit agreements, and they are, of course, enforceable in Alabama. See, e.g., Massey v. Ingram, 567 So. 2d 1272 (Ala. 1990); American Nat. Bank & Trust Co. of Mobile v. Robertson, 384 So. 2d 1122 (Ala. 1980); Semmes Nurseries, Inc. v. McDade, 288 Ala. 523, 263 So.2d 127 (1972). See also § 7-1-208, Ala. Code (2000); Savers Federal Sav. & Loan Ass'n v. Amberly Huntsville, Ltd., 934 F.2d 1201 (11th Cir. 1991).

Nonetheless, it is settled in Alabama that in the absence of an acceleration clause in a note, a promissee is not entitled to a judgment for the full amount of a note based upon a promissor's failure to pay installments when due; a promisee may recover only the amount of the installments that are past due, according to the terms of the note, at the time of the entry of judgment. See Rosenfeld v. City Paper

Co., 527 So. 2d 704, 705-06 (Ala. 1988). Here, MAFC has not directed the Court's attention to an acceleration clause in any agreement signed by West Jefferson. Nor has the Court discovered one in its examination of the Purchase Agreement, the Estoppel and Consent Agreement, and the other documentary evidence submitted. The Purchase Agreement does provide, "If any payment is more than twenty (20) days delinquent, Dinamation will consider the purchase in default." Purchase Agreement, ¶ 2(F). However, "case law, generally speaking, supports . . . that acceleration of the maturity of unaccrued payments is not to be read into payment contracts by implication." Rosenfeld, 527 So. 2d at 705 (internal quotation marks omitted). And the Court is unable to find a provision in the Purchase Agreement or any other relevant contract that would allow Dinamation, or MAFC as its assignee, to accelerate the maturity of the entire debt upon such default.[9] Therefore, the Court concludes that MAFC has failed to demonstrate that it is entitled at this time to recover for the two payments that are not due under the Purchase Agreement until May 31, 2001 and May 31, 2002. Rosenfeld, supra.

## IV. CONCLUSION

Based on the foregoing, the Court holds as follows: The waiver-of-defense clause in the Estoppel and Consent Agreement is enforceable against West Jefferson under § 7-9-206. Because MAFC, as Dinamation's assignee, has established that it is a holder in due course, West Jefferson is barred from asserting its proffered defenses against MAFC, because such defenses are not "real" defenses and are based on Dinamation's alleged misconduct. Therefore, MAFC's motion for summary

---

[9]The only contractually specified immediate consequence of default, as far as the Court can discern, is that Dinamation could terminate the "License Agreement," by which West Jefferson could make use of the Dinamation Trademark. See Purchase Agreement, ¶ 4(C).

judgment on its breach-of-contract claim against West Jefferson is due to be GRANTED. However, although MAFC has shown that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law as to liability on such claim, MAFC is not entitled to all of the damages it now seeks. MAFC has established that it is entitled to recover an award of $602,850.90, representing amounts for the $500,000 payment due on May 31, 2000, as well as a $50,000 penalty thereupon and an attorney's fee in the amount of $52,850.90. However, because of the lack of an acceleration clause, MAFC is not entitled at this time to recover for the $500,000 and $492,987 payments that are not due, under the terms of the Purchase Agreement, until May 31, 2001 and May 31, 2002, respectively. MAFC is also entitled to summary judgment with respect to all of the counterclaims asserted against it by West Jefferson. A separate order will be entered.

**IT IS SO ORDERED**, this 19th day of April, 2001.


_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE